UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:15-CV-00147-JHM

HOLIDAY DRIVE-IN, LLC,                                                                    PLAINTIFF

V.

LIBERTY MUTUAL INSURANCE                                                              DEFENDANTS
COMPANY, HELTON INSURANCE
AGENCY, INC., and UNKNOWN DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand [DN 6] and on Plaintiff's Motion to Strike the Affidavit of David Megel [DN 12]. Fully briefed, these matters are ripe for decision. For the following reasons, the Plaintiff's Motion to Remand is **DENIED**, and Plaintiff's Motion to the Strike Affidavit is **DENIED**.

### I. BACKGROUND

Plaintiff Holiday Drive-In originally filed this action in McLean County Circuit Court alleging six counts against Defendants, including breach of contract, waiver/detrimental reliance, bad faith, joint liability and negligent instruction/supervision/retention in underwriting and/or claims handling, rescission, breach of fiduciary duty, and a declaration of rights, seeking punitive damages, liquidated damages, interests, and attorneys' fees. (Pl.'s Compl. [DN1-2] ¶¶ 25–70.) Defendants include Liberty Mutual Insurance Company (hereinafter "Defendant Liberty") and Helton Insurance Agency (hereinafter "Defendant Helton"). Defendant Helton, an insurance broker, issued Plaintiff a Liberty Mutual insurance policy with a policy period of July 2014 through July 2015.[1] (Pl.'s Mem. Supp. Mot. Remand [DN 6-1] at 1.) The policy was between

---

[1] Defendant asserts that the policy was actually issued by Ohio Security Insurance Company. Plaintiff seems to disagree. However, resolution of this issue is not necessary at this time, and the Court will, for purposes of the instant Motion, consider the policy to be issued by Defendant Liberty Mutual Insurance Company.

Plaintiff and Defendant Liberty, as Plaintiff paid Defendant Liberty all premiums, and the insurance policy entered into by Defendant Liberty covered Plaintiff's drive-in theatre located in Rockport, Indiana. (Id. at 1–2.)

Plaintiff's cause of action arises out of an insurance claim resulting from property damage that its theatre suffered on or around April 9, 2015. (Id. at 2.) Plaintiff reported loss to Defendant Liberty including, but not limited to, damage to the structure, damaged contents, loss of use/lost profits, and depreciation of building. (Pl.'s Compl. [DN 1-2] ¶ 16.) Plaintiff claims that Defendant "Liberty then instructed an engineer to render a report disclaiming coverage" so that Defendant Liberty could avoid paying Plaintiff's claim under its insurance policy. (Id. ¶¶ 18, 20.) Defendant Liberty did in fact deny Plaintiff's claims and to this date has not paid Plaintiff for the damages sustained. (Id. 20–23.)

After Plaintiff filed its Complaint in state court, Defendant Liberty removed the action to this Court under diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal [DN 1] ¶ 8.) Defendant Liberty states that it is a citizen of the state of New Hampshire, the state of its incorporation, and a citizen of the state of Massachusetts, the state of its principal place of business. (Id. ¶ 10.) Defendant Helton, however, is a citizen of Kentucky, as it is a Kentucky Corporation doing business in McLean County, Kentucky. (Id. ¶ 12.) Plaintiff is also a citizen of Kentucky, organized in Kentucky and operating its principal place of business in Kentucky. (Id. ¶ 9; Pl.'s Mem. Supp. Mot. Remand [DN 6-1] at 5–6.) Defendant Liberty claims that Defendant Helton was fraudulently joined and therefore its citizenship should be ignored for the purposes of determining whether removal was proper. (Pl.'s Compl. [DN 1-2] ¶ 12.) Additionally, Defendant Liberty asserts that "Plaintiff's allegations, if proven, could entitle it to damages in excess of $75,000." (Id. ¶ 6.)

In order to support its contention that the amount in controversy in this matter meets the jurisdictional minimum of $75,000 required for removal under diversity jurisdiction, Defendant Liberty submits several pieces of evidence.  Defendant Liberty relies primarily on an affidavit of David Megel, a claim representative of Defendant Liberty's, who states that based on his experience as an insurance claims adjuster, he "believe[s] the total costs that would be associated with a complete repair to the roof of [Plaintiff's] building, the exterior wall structure, and the interior apartments would most likely exceed $85,000."  (Megel Aff. [DN 10-2] ¶ 9.)  Also included is a report of Kelli Taylor and Brandon Bealmear, engineers from PT&C|LWG Forensic Consulting Services, which details the findings and conclusions of their inspection.  (Inspection Report [DN 10-2] at 3–6.)  This report documented the extensive damages Plaintiff's building sustained.  (Id.)  Additionally, Defendant Liberty attached photographs and weather information referenced in both the inspection report and Megel's affidavit.  (Photographs [DN 10-3] at 2–21; Weather Data [DN 10-4] at 2–9.)

Despite this evidence, Plaintiff seeks remand to McLean County Circuit Court, claiming a lack of diversity and alleging that the amount in controversy requirement has not been met.  Plaintiff additionally requests that the Court strike Megel's affidavit attached to Defendant Liberty's Response to Plaintiff's Motion to Remand.

## II. STANDARD OF REVIEW

Removal from state to federal court is proper for "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  Defendant removed this action based on traditional diversity jurisdiction under 28 U.S.C. § 1332(a).  Diversity jurisdiction gives "[t]he district courts . . . original jurisdiction [over] all civil

actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a), (a)(1).

Here, both the citizenship of the parties and the amount in controversy is at issue. Diversity of citizenship, the basis for jurisdiction in the present case, "exists only when no plaintiff and no defendant are citizens of the same state." Jerome-Duncan, Inc. v. Auto-By-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999) (citing United States Fidelity and Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1089 (6th Cir. 1992)). However, "[w]hen a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." Id. (quoting Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (holding that because there was at least a colorable claim against the non-diverse defendant in state court, remand was proper)). Finding a defendant was fraudulently joined allows the district court to ignore that non-diverse party's citizenship for purposes of determining whether removal was proper on the basis of diversity jurisdiction. See Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999) (citing Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998) (noting that "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity"); Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994)) ("[T]his Court has recognized that fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds.").

In addition to complete diversity between the parties, the amount in controversy in the suit must be greater than $75,000. 28 U.S.C. § 1332(a). "A defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement." Everett v. Verizon Wireless, Inc., 460 F.3d 818, 829 (6th Cir. 2006) (citing Gafford v. Gen. Elec. Co., 997 F.2d 150,

155 (6th Cir. 1993) abrogated on other grounds by Hertz Corp. v. Friend, 559 U.S. 77 (2010)). Typically, "the sum claimed by the plaintiff[s] controls," but, where plaintiffs seek "to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," defendants will satisfy their burden of proving the amount in controversy by a preponderance of the evidence, or, in other words, by showing that the amount "more likely than not" exceeds $75,000. Gafford, 997 F.2d 156, 158. And, in gauging the amount in controversy, courts view the claims from the vantage point of the time of removal. Everett, 460 F.3d at 822 (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 293 (1938)).

### III. DISCUSSION

The issues before the Court are whether Defendant Helton was fraudulently joined and whether the amount in controversy has been proven by a preponderance of the evidence. The Court will address these arguments in turn.

**A. Fraudulent Joinder**

Under the doctrine of fraudulent joinder, the inquiry is whether Plaintiff has at least a colorable cause of action against Defendant Helton in Kentucky state court. Jerome-Duncan, 176 F.3d at 907; see Alexander v. Electronic Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994). The Court must look to Kentucky law to determine whether Defendant Helton is a proper party, or whether it was fraudulently joined. Id. "Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." Alexander, 13 F.3d at 949 (citations omitted). Or, stated another way, there must be a "reasonable basis for predicting that [the plaintiff] could prevail." Id. "[A]ny disputed questions and fact and ambiguities in the controlling state law [should be resolved] . . . in favor of the

5

nonremoving party." Id. Lastly, the Defendant Liberty bears the burden of proving that Defendant Helton was fraudulently joined. Jerome-Duncan, 176 F.3d at 907; see Alexander, 13 F.3d at 949.

Plaintiff maintains that it has a claim of rescission against Defendant Helton. However, all that Plaintiff stated in its complaint is that "Defendant Helton Insurance Agency, in the event that Plaintiff's premium is returned, would also be required to return any commission it received. Thus, Helton may claim an interest in this action." (Pl.'s Compl. [DN 1-2] ¶ 55.) The contract in this case is between Plaintiff and Defendant Liberty. Defendant Helton is not a party to it. Any claim for rescission of the contract is a claim against Defendant Liberty alone.

Besides, rescission is not on its own a cause of action. Rather, it is a remedy afforded to those plaintiffs in situations of breach of contract, misrepresentation, or non-performance. Hatcher-Powers Shoe Co. v. Bickford, 278 S.W. 615, 619 (1925) ("Rescission is purely an equitable remedy."); Ronald W. Eads, Kentucky Handbook Series, Kentucky Law of Damages, Rescission and Abandonment § 18:4 (2015) ("Certain forms of equitable relief," like rescission, "are available for breach of contract."); see also Union Planters Nat. Bank of Memphis v. CBS, Inc., 557 F.2d 84, 90 (6th Cir. 1977) (finding that the plaintiff did not assert an independent cause of action solely by seeking rescission of the agreement at issue); Yaldu v. Bank of Am. Corp., 700 F. Supp. 2d 832 (E.D. Mich. 2010) ("Rescission and reformation are not separate causes of action; rather, they are equitable remedies."); Monroe Bank & Trust v. Jessco Homes of Ohio, LLC, 652 F. Supp. 2d 834 (E.D. Mich. 2009) ("[A] rescission claim may only proceed if Defendants' claim for fraudulent or innocent misrepresentation is not summarily dismissed; rescission is not an independent cause of action.").

Plaintiff has asserted no colorable claim against Defendant Helton that could survive in Kentucky state court. Asserting that Defendant Helton might have an interest in the action is not sufficient. Accordingly, the Court finds that Defendant Helton was fraudulently joined.

### B. Amount in Controversy

Additionally, Plaintiff asserts that Defendant Liberty has not met its burden of showing the amount in controversy requirement. Generally, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). However, "when the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."[2] Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 551 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)). In order to prove this, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Id. at 551. However, when a plaintiff protests the removal, the removing defendant must prove the jurisdictional requirements are met by a preponderance of the evidence. Puri v. Baugh, No. 1:14-CV-137, 2015 WL 3796346, at *2 (W.D. Ky. June 18, 2015) (citing Everett, 460 F.3d at 829). This "does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." Spence v. Centerplate, 931 F. Supp. 2d 779, 781 (W.D. Ky. 2013) (citing Gafford, 997 F.2d at 158; see also Dart Cherokee, 135 S. Ct. at 554 ("[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.").

---

[2] In Kentucky, when a plaintiff is seeking unliquidated damages, he may not recite the exact amount within his complaint, as was not done here. Ky. R. Civ. P. 8.01 ("In any action for unliquidated damages the prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish the jurisdiction of the court . . . .").

Plaintiff here does not argue that the amount in controversy here is less than $75,000. Instead, Plaintiff argues that Defendant has simply not met its burden in proving that the amount in controversy is satisfied by a preponderance of the evidence. As an initial matter, Plaintiff requests that the Court strike the affidavit of David Megel, a claim representative, which Defendant Liberty attached to its Response to Plaintiff's Motion to Remand. (Pl.'s Reply [DN 11] at 6; Pl.'s Mot. to Strike Megel Aff. [DN 12] at 1.) Megel's affidavit, supported by an inspection report compiled by two professional engineers, photographs of the damage, and weather data, states that the damage sustained to Plaintiff's property "would most likely exceed $85,000." (Megel Aff. [DN 10-1] at 2.) Plaintiffs argue that this affidavit should not be considered because it was not attached to Defendant Liberty' Notice of Removal, but rather was entered into evidence post-removal. (Pl.'s Reply [DN 11] at 6.)

"The Supreme Court has upheld removal where jurisdictional facts required to support the removal were found in later-filed affidavits rather than in the notice of removal." USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 206 (3d Cir. 2003) (citing Willingham v. Morgan, 395 U.S. 402, 407 n. 3 (1969) ("This material should have appeared in the petition for removal. However, for purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits.")). Accordingly, "[t]his Court may consider evidence of the amount in controversy at the time of removal regardless of whether that evidence was produced (or available) at the time of removal." Puri, 2015 WL 3796346, at *3 (citing Holland v. Lowe's Home Ctrs., Inc., 198 F.3d 245, 1999 WL 993959, at *2 (6th Cir. 1999)). "Where the plaintiff's pleadings are insufficient to determine the amount in controversy, the court may consider the allegations of the petition for removal," and specifically, it may consider "affidavits submitted in opposition to remand." Kennard v. Harris Corp., 728 F.

8

Supp. 453, 454 (E.D. Mich. 1989) (citing Smith v. Executive Fund Life Insurance Co., 651 F.Supp. 269, 270 (M.D. La. 1986); McCurtain County Production Corp. v. Cowett, 482 F.Supp. 809, 813 (E.D. Okla. 1978)). In fact, "affidavits have traditionally been a favorite method—available to both parties—of supplementing the pleadings to show the value of the amount in controversy." 32A Am. Jur. 2d Federal Courts § 1047 (2016) (citing Morris v. Gilmer, 129 U.S. 315 (1889); Martin v. Little, Brown & Co., Inc., 590 F. Supp. 1004 (E.D. Pa. 1984)). Therefore, here, although Defendant Liberty included Megel's affidavit with its Response, rather than with its Notice of Removal, the Court may properly consider it in determining whether the amount in controversy requirement has been met for the purposes of diversity jurisdiction. Plaintiff's argument fails and Plaintiff's Motion to Strike Megel's Affidavit is denied.

In terms of meeting the preponderance of the evidence standard, Plaintiff argues that Defendant Liberty's assertions that Plaintiff's claims exceed the jurisdictional threshold are purely speculation and therefore insufficient. The Sixth Circuit simply requires "the removing defendant [to] show that it is more likely than not that the plaintiff's claims meet the amount in controversy requirement." Spence, 931 F. Supp. 2d at 781 (quoting Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 871 (6th Cir. 2000)). Defendant Liberty argues that Megel's estimate, combined with all other potential forms of relief, like punitive damages, lost profits, damages for personal property, and attorneys' fees, clearly demonstrate that the jurisdictional threshold has been met. Because it is common practice to consider affidavits of the defendant's employees estimating the costs of the plaintiff's damages, the Court will take into account the estimate made in Megel's affidavit in making the amount in controversy determination. See McPhail v. Deere & Co., 529 F.3d 947, 956 (10th Cir. 2008) (finding that "other documentation can provide the basis for determining the amount in controversy," such as "affidavits from the defendant's

9

employees or experts, about how much it would cost to satisfy the plaintiff's demands"); Meridian Sec. Ins. Co. v. Sadowski, 441 F.3d 536, 541–42 (7th Cir. 2006) (finding that defendants may establish the amount in controversy by "introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands"); see also Rubel v. Pfizer Inc., 361 F.3d 1016 (7th Cir. 2004).  While Plaintiff argues that Megel's statement that the costs of the repairs exceed $85,000 was purely speculative, the Court finds that it was not.  Megel personally inspected the site, finding:

> The damage to the building included the partial detachment of the building's roof from the exterior joists and concrete masonry wall, the failure of the roof membrane and damage to the underlying roof decking, and the outward displacement of the east masonry wall. The apartment units directly below the roof damage were saturated with water and sustained visible damage to drywall, flooring, and insulation (in exposed areas). I also observed mold damage throughout the apartment units directly below the roof opening.

(Megel Aff. [DN 10-1] ¶¶ 6–8.)  Megel is an experienced claims adjuster and gave his informed opinion as to the extent of only the exterior and physical damages to the building.  Though he did not reveal his exact method, it is evident that Megel made his calculation by using his experience and expertise to assess the damage he witnessed and assign an approximate value to it.  Ultimately, because Plaintiff contests the speculative nature of the figure rather the figure itself, and the Court finds no reason to question it, the Court will accept it as a sufficient statement of damages for the purposes of determining whether Defendant Liberty has met the amount in controversy requirement.  Dart Cherokee, 135 S. Ct. at 553 (finding that "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court").

Additionally, the Court may consider punitive damages in determining the amount in controversy "unless it is apparent to a legal certainty that such cannot be recovered." Hollon v.

Consumer Plumbing Recovery Ctr., 417 F. Supp. 2d 849, 852 (E.D. Ky. 2006) (citing Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 572 (6th Cir. 2001)).  Therefore, considering the fact that Plaintiff seeks not only compensation for damage to the building, which Defendant Liberty successfully asserts exceeds $85,000, but also compensation for lost profits and depreciation of the building, damages for personal property, and punitive damages, Defendant Liberty has met its burden of proving that the amount in controversy more likely than not exceeds the jurisdictional minimum.  Thus, the amount in controversy requirement for the purposes of diversity jurisdiction has been met.

Overall, Plaintiff has established that Defendant Helton was fraudulently joined and must be dismissed as a party, as Plaintiff has asserted no cognizable claim against it.  And, Defendant has met its burden in establishing the amount in controversy exceeds the threshold for removal.  Therefore, this action was properly removed to this Court under diversity jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand [DN 6] is **DENIED**.  **IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Affidavit of David Megel [DN 12] is **DENIED**.

*Joseph H. McKinley*

Joseph H. McKinley, Jr., Chief Judge
United States District Court

March 4, 2016

cc: counsel of record